IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

PATRICIA ANN ALDRIDGE,

        Petitioner,

V.                                        CIVIL ACTION NO. 3:05-0827

DAVID BALLARD, Warden,
Lakin Correctional Center,

        Respondent.

**FINDINGS AND RECOMMENDATION**

In August of 1999, a Wayne County, West Virginia jury found Patricia Ann Aldridge guilty of murder in the first degree following a trial in which evidence presented by the prosecution showed that she and her admitted paramour, Mitchell Vickers, had solicited individuals to murder petitioner's husband, Millard Aldridge, and that Patricia Aldridge had assisted her husband's killer, Vickers, both before and after he brutally beat Millard Aldridge to death.  The jury did not recommend mercy and, as a consequence, Patricia Ann Aldridge was sentenced by the court to life imprisonment without the possibility of parole.  Aldridge's petition for an appeal from her conviction was refused by the Supreme Court of Appeals of West Virginia.  Thereafter, Aldridge filed a petition for writ of habeas corpus in the Circuit Court of Wayne County.  That petition was denied by order entered March 2, 2005.  A petition for appeal from the denial of habeas relief was denied by the Supreme Court of Appeals, and Aldridge then filed a petition for habeas relief under the provisions of 28 U.S.C. §2254 with this Court.

In her petition, Aldridge complains of numerous rulings by the trial court, asserts that lawyers representing her were ineffective and asserts that "cumulative error in the trial-level proceedings" deprived her of due process.

As an initial matter, account is taken of the fact that the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes significant restrictions on the power of federal courts to grant relief in habeas proceedings initiated by state prisoners. Thus, when, as in this case, claims asserted in a federal habeas petition have been adjudicated in state court[1] relief is available only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. §2254(d)(1), or the decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Section 2254(d)(2). The critical phrases contained in Section 2254(d)(1) are "contrary to" and "unreasonable application," and the Supreme Court has said that "independent meaning" must be given to both clauses. Williams v. Taylor, 529 U.S. 362, 402 (2000). With respect to the first clause, a state court decision is contrary to precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "the state court confronts facts that are materially indistinguishable from a

---

[1] Aldridge's habeas petition was denied in a decision by a judge of the Circuit Court of Wayne County. While the basis for decision is not always clear, nevertheless, "adjudication on the merits ... excludes only claims that were not raised in state court, and not claims that were decided in state court, albeit in a summary fashion." Thomas v. Taylor, 170 F.3d 466, 475 (4th Cir. 1999). When a claim is summarily rejected, federal courts independently review the record and clearly established Supreme Court law; however, the issue remains whether the court's decision was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. Bacon v. Lee, 225 F.3d 470, 478 (4th Cir. 2000).

relevant Supreme Court precedent and arrives at a result opposite to" that reached by the Court. Id. at 405. With respect to the unreasonable application clause, a federal habeas court "may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case." Bell v. Cone, 535 U.S. 685, 694 (2002). The focus of this "inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable" as distinguished from being merely "incorrect." Id.[2]

Taking cognizance of these limits on federal court review of state prisoner habeas proceedings, it is clear that the state court's adjudication of petitioner's claims precludes granting relief in this Court.

Initially, Aldridge complains of the trial court's failure to grant her motion for a change of venue, asserting that negative pretrial publicity and "widespread hostile sentiment made it impossible for the petitioner to receive a fair trial in Wayne County." While this claim is premised on conclusory allegations concerning "pretrial negative publicity," "unduly prejudicial public statements" and "widespread hostile sentiment," very thorough voir dire, including individual voir dire of members of the venire who indicated they had any knowledge of the case, established that, in nearly every instance, potential jurors had only vague recollections of newspaper or television accounts and none had formed opinions about the case. Similarly, members of the venire who were aware of the trial and conviction of Mitchell Vickers, had only vague recollections of media

---

[2] In making this distinction the Court referenced its discussion of the "unreasonable application" clause in Williams v. Taylor, supra at 411, where it had pointed out that "a federal habeas court may not issue the writ simply because the Court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

accounts.[3] All members of the venire advised the Court, under oath, that they remained impartial and that in deciding petitioner's case they would disregard what had been read in newspapers or heard on television and reach a decision based only on the law and the evidence presented in the courtroom.[4]

A criminal defendant tried in state court is entitled, under the Due Process Clause, to a "fair hearing," which requires, as an element, "trial by a panel of impartial, 'indifferent' jurors." Irvin v. Dowd, 366 U.S. 717, 722 (1961). As the Court recognized in Dowd, however, there is no requirement that "jurors be totally ignorant of the facts" or without "some impression or opinion as to the merits of the case," only that jurors be able to "lay aside [their] impression or opinion and render a verdict based on the evidence presented in court." Id. at 723. Motions for change of venue are "committed to the sound discretion of the trial court," Tuggle v. Thompson, 57 F.3d 1356, 1364 (4th Cir. 1995)(vacated on other grounds, 516 U.S. 10 (1995)), and involve a determination of whether "publicity is so inherently prejudicial that trial proceedings must be presumed to be tainted," requiring a change of venue,[5] and "voir dire of prospective jurors to determine if actual

---

[3] Of the thirty-two people on the venire, none had formed an opinion of what the outcome of the trial should be and only four advised the Court and counsel that they thought they might be influenced by what they had read or seen. These four were excused along with another individual whose physical problems might have interfered with his service as a juror. By way of contrast, in Murphy v. Florida, 421 U.S. 794, 803 (1975), a case in which the Court found that the habeas petitioner had "failed to show that the setting of the trial was inherently prejudicial" or that the jury selection process gave rise to "an inference of prejudice" "20 of the 78 persons questioned were excused because they indicated an opinion as to the petitioner's guilt."

[4] Patently, these prospective jurors did not have "such fixed opinions that they could not judge impartially the guilt of defendant." Patton v. Yount, 467 U.S. 1025, 1035 (1984).

[5] "[E]xtensive knowledge in the community of either the crimes or the putative criminal is not sufficient by itself to render a trial constitutionally unfair," Bobbert v. Florida, 432 U.S. 282, 302 (1977), and it is "[o]nly in extreme circumstances" that prejudice may "be presumed from the existence of pretrial publicity itself." Wells v. Murray, 831 F.2d 468, 472 (4th Cir.

prejudice exists." United States v. Bakker, 925 F.2d 728, 732 (4th Cir. 1991). There is nothing in the record of this case to indicate that pretrial publicity even approached the level of intensity required to raise a presumption of prejudice and it is apparent from the voir dire of the venire that it did not. Clearly, under the standards previously noted, the state habeas court's finding that denial of petitioner's motion for a change of venue was neither error of constitutional magnitude nor an abuse of discretion was not contrary to or an unreasonable application of Supreme Court law.

Petitioner next claims that the trial court's sua sponte continuance of the trial "to the next term of court" violated her right to speedy trial. Aldridge was indicted in November of 1998[6] and trial was set for February of 1999. A January 1999 motion for continuance filed by the State was granted, and the trial was continued to June 1, 1999. Thereafter, the Court on its own motion continued the trial to August 23, 1999. The record does not indicate that petitioner filed objections to the continuances or motions for speedy trial. The trial court continued the trial to August 1999 "to avoid using the same jury panel to try companion cases," i.e., the trials of Mitchell Vickers and petitioner.

The Sixth Amendment, made applicable to the states by the Due Process Clause of the Fourteenth Amendment, guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial... ." While appearing to "forbid the government [from delaying] the trial of an 'accused' for any reason at all," Supreme Court decisions have "qualified the literal sweep of the provision," and, in evaluating pretrial delay in the context of claims of denial of speedy trial

---

1987).

[6] Though not a part of the record, it appears that proceedings were initiated in the summer of 1998 in magistrate court in Wayne County.

consider "whether delay before trial was uncommonly long, whether the government or the criminal defendant is more to blame for that delay, whether, in due course, the defendant asserted his right to a speedy trial, and whether he suffered prejudice as the delay's result." Doggett v. United States, 505 U.S. 647, 651 (1992). In evaluating the length of the delay, the Court first considers whether "the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay," and only if a case has not been "prosecuted with customary promptness" does the Court consider "as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." Id. at 651-52. The time from charge to trial in this case, approximately a year, is "'presumptively prejudicial,'" i.e., the point at which courts deem the delay unreasonable enough to trigger the Barker inquiry." Id. at 652 n. 1.[7] If, as in this case, an "accused makes this showing, the Court must then consider, as one factor among several,[8] the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." Id. at 652. In this case, the delay barely goes beyond the "bare minimum" and the basis for that delay, "to avoid using the same jury panel to try companion cases," was clearly reasonable. With regard to prejudice, the Court notes that petitioner was not incarcerated prior to her conviction and there is no claim that the memory of witnesses was impaired by the delay or that witnesses, available earlier, were not available at the time of trial.

---

[7] Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from "'presumptively prejudicial' delay ... since by definition he cannot complain that the government has denied him a 'speedy' trial if it has, in fact, prosecuted his case with customary promptness." Id. at 651-52.

[8] Satisfaction of "the threshold requirement" does not, of course, end inquiry for, as was pointed out in United States v. Woolfolk, 399 F.3d 590, 598 (4th Cir. 2005), the court has "previously found no Sixth Amendment violation in cases involving time periods much greater than that at issue here." (Citing cases involving thirty-five months and two and a half years).

Petitioner has complained that "[w]hen the state acquiesced to move petitioner's trial to the next term of court" it "knew that the Vickers' trial would precede the Petitioner's trial" and thereby "learned a lot of information concerning the role of the Petitioner and, thus, obtained a tactical advantage over the Petitioner." Acquiescence in the trial court's undoubtedly prudent decision to continue the trial to the next term of court, however, does not indicate bad faith on the part of the prosecution. In light of all of these circumstances and of the fact that petitioner failed to assert her right to a speedy trial,[9] the Court concludes that petitioner has failed to establish a denial of her Sixth Amendment right to speedy trial, and it is clear that the state habeas court's finding that her speedy trial right was not violated was not contrary to or an unreasonable application of Supreme Court law.

Petitioner next complains of a number of evidentiary rulings by the trial court. In this regard, it should first be noted that on state habeas review federal courts "do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding." Burket v. Angelone, 208 F.3d 172, 186 (4th Cir. 2000).[10] In her petition, Aldridge asserts that, in the absence of notice and without balancing probative value against the danger of prejudice, the court admitted evidence of other "crimes, wrongs or acts" concerning discussions of petitioner and Mitchell Vickers with others in which they solicited individuals to kill Millard Aldridge, admitted the testimony of a law

---

[9] While not dispositive, failure to assert the right to speedy trial is, as has been seen, a factor to be considered and the "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial."

[10] In the absence of "circumstances impugning fundamental fairness or infringing specific constitutional protections," claims with regard to the admissibility of evidence in state trials provide no basis for relief in federal habeas proceedings. Grundler v. North Carolina, 283 F.2d 798, 802 (4th Cir. 1960).

7

enforcement officer concerning statements made by one of those individuals several months before Millard Aldridge was murdered to the effect that there was a plot to kill Aldridge, improperly bolstering that individual's testimony, and allowed in evidence, without authentication,[11] an Easter card mailed by Mitchell Vickers to petitioner in which Vickers had written that he would kill for her. In its decision, the habeas court pointed out that the "testimony regarding Petitioner's and Vickers' solicitation was direct evidence of Petitioner's crime," not considered evidence of "'other crimes'" when, as in petitioner's case, "it 'arose out of the same ... series of transactions as the charged offense, ... or it is necessary to complete the story of the crime on trial.'" (Quoting from United States v. Kennedy, 32 F.3d 876, 885 (4th Cir. 1994)). The Court concluded that the testimony of the law enforcement officer that he had been informed of a plot to murder Millard Aldridge several months before the murder was "utilized to provide a timeframe that Kowalski exposed the murder plot five months before" the murder, "not ... to bolster Kawalski's testimony." With respect to the Easter card, the habeas court found that the card was authenticated and "was properly used as impeachment material" in light of petitioner's testimony. While this Court is not required to resolve what are essentially state law evidentiary matters, bearing in mind that a right to relief under the Due Process Clause requires a showing that admission of the evidence complained of "'violates those fundamental conceptions of justice which lie at the base of our civil and political institutions,'" Dowling v. United States, 493 U.S. 342, 353 (1990), it is clear that admission of the evidence complained of provides no basis for relief in this federal habeas proceeding nor were the habeas court's findings with regard to the evidentiary rulings contrary to or an unreasonable application of Supreme Court law.

---

[11] In her testimony, petitioner acknowledged that Vickers had sent the card to her.

Petitioner next asserts that the "state's case-in-chief failed to reveal any support for the state's theory that petitioner engaged in a common scheme with Vickers to kill her husband." This, however, is simply not the case. In fact, in the state's case in chief there was abundant evidence of petitioner's involvement in the planning and execution of the murder of Millard Aldridge. Moreover, as a matter of constitutional law, "after viewing the evidence in the light most favorable to the prosecution" unquestionably "any rationale trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).

In her petition, Aldridge next asserts that, post-trial, an investigator hired by counsel recorded a phone conversation with a state's witness, Shannon Kawalski, in which Kawalski said that another of the state's witnesses, Eric Hargis, had told him that he, Hargis, had been in the garage when Vickers murdered Millard Aldridge. Kawalski said that he had informed officials in Wayne County of Hargis' statement.[12] Citing Brady,[13] petitioner asserts a due process violation, alleging that the state "failed to disclose ... the crucial exculpatory evidence during the trial." In the decision on her habeas petition in state court, the circuit court judge concluded, inter alia, that the evidence was not "material" under Brady standards.

Under Brady, and its progeny, the state is required to disclose favorable evidence to a defendant, and constitutional error results if it fails to do so and it is determined that the evidence

---

[12] The timing, as with much else in Kawalski's statement, is not clear. Kawalski did say during the conversation that officials "investigated and did a follow-up on it and found he wasn't there" and that he thought Hargis "was ... just trying to act big," that "he don't take [stuff] like that serious."

[13] Brady v. Maryland, 373 U.S. 83 (1963).

is "material," United States v. Bagley, 473 U.S. 667, 669 (1985), i.e., "'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Kyles v. Whitley, 514 U.S. 419, 433-34 (1995)(quoting United States v. Bagley, supra at 682). "A 'reasonable probability' of a different result is ... shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" Kyles v. Whitley, supra at 434. Utilizing these standards and considering the evidence before the jury in this case,[14] the Court does not believe that this "evidence," if in fact known by the prosecution, was material and concludes that the state habeas court's finding of no Brady error was not contrary to or an unreasonable application of Supreme Court law.

Petitioner next asserts that counsel representing her at trial was ineffective. In ruling on this claim, the Court evaluates counsel's performance under standards established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), recognizing that the proper standard for attorney performance is that of "reasonably effective assistance" and that petitioner must establish not only "that counsel's representation fell below an objective standard of reasonableness" id. at 687-88, but also that counsel's deficient performance prejudiced the defense, i.e., that "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different," "reasonable probability" being a probability "sufficient

---

[14] Without attempting to summarize the evidence, the Court would simply note that the trial in this case lasted five days, most of the time was taken up by the prosecution's case, the state presented well over twenty witnesses and, as previously noted, inculpatory evidence was "abundant." Clearly, evidence with regard to Hargis' alleged statement could not "reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict," Kyles v. Whitley, supra at 435, and while there is, of course, a possibility, there is clearly not established "a reasonable probability of a different result." Strickler v. Greene, 527 U.S. 263, 292 (1999).

to undermine confidence in the outcome." Id. at 694. The "performance inquiry" requires the court to consider "whether counsel's assistance was reasonable considering all the circumstances," id. at 688, and scrutiny of counsel's performance under the prescribed constitutional standard does not contemplate application of a "set of detailed rules for counsel's conduct," id., the Supreme Court having "declined to articulate specific guidelines for appropriate attorney conduct... ." Wiggins v. Smith, 539 U.S. 510, 521 (2003). Recognizing the "constitutionally protected independence of counsel" and "the wide latitude counsel must have in making tactical decisions," the Supreme Court has admonished reviewing courts that, in resolving ineffectiveness claims, "scrutiny of counsel's performance must be highly deferential," that every effort must be made "to eliminate the distorting effects of hindsight" and that the challenged conduct must be evaluated "from counsel's perspective at the time." Strickland v. Washington, supra at 689. Moreover, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. Utilizing these standards, the Court does not find in the motion or the record of this case any basis for concluding that counsel's performance was deficient.

Preliminarily, the Court would note that petitioner's claims with respect to counsels'[15] alleged ineffectiveness are stated, for the most part, in conclusory, indeed speculative, terms, concern in many instances peripheral matters which clearly had no effect on the outcome of the trial, and, ultimately, provide no basis for finding counsel's performance deficient or in any manner prejudicial to the defense. Thus, petitioner asserts that counsel "failed to investigate the background

---

[15] Two attorneys were appointed to represent petitioner.

11

of State's witnesses as well as the whereabouts of State's witnesses at the time of the murder." Upon what basis petitioner believes this to be so is unclear,[16] and she does not indicate what further investigation would have shown.[17] Similarly, petitioner contends that "defense counsel failed to investigate the possibility of producing character witnesses" without indicating on what she bases this claim, the nature of the testimony or who might have testified in that regard. She also says, "[i]ncidentally, keeping the evidence of the marital infidelity (or at least minimizing the effects of such damaging evidence) also remained unnoticed by the Petitioner's trial counsel." Why she believes this "remained unnoticed" is not explained and there is no suggestion as to how one might minimize such effects in the circumstances of this case. Her claim that counsel made "[n]o investigation of the pre-trial hostile environment" is simply belied by the record. Again, petitioner's contention that an investigation should have been undertaken of the "state of mind" of Mitchell Vickers, who, she says, was "obsessed" with her, is made without any basis, scientific or otherwise, for believing that he was, as petitioner describes him, "a 'lone ranger' who was fixated upon the Petitioner but, amazingly enough, not bent on killing her husband." Nor, considering the testimony before the jury, does petitioner explain how this "investigation" might have proved helpful. Her contention that "no crime scene expert was hired" accompanied by her assertion that "[m]aybe a careful review of the crime scene and the van would have revealed the evidence of the presence of another assailant (Hargis)" is, obviously, and by its terms, purely speculative. Other contentions are

---

[16] Where appropriate, cross-examination of witnesses of the State was vigorous and counsel appeared to be knowledgeable concerning the background of the individuals testifying.

[17] Further investigation, of course, might have determined whether Hargis told Kawalski he was present when Millard Aldridge was murdered and whether or not there was any truth to the statement. Nothing presented, however, indicates that Hargis was present and this simply remains a matter of speculation.

similarly flawed. Finally, petitioner says, "the error which should, by itself, be enough to offer the Petitioner a new trial is the trial counsel's failure to investigate the option of a bifurcated trial... ."[18] Of course, the record does not establish that counsel did not, in fact, "investigate the option of a bifurcated trial," and when petitioner states that "it also appears that the trial counsel never seriously discussed the matter of potential bifurcation" with her, one cannot even be confident that the matter was not discussed. Moreover, as respondent has pointed out in his memorandum, counsel would have been "aware that the rules of evidence for bifurcated sentencing proceedings are liberal and would have allowed for the introduction of evidence that may have destroyed any chances the Petitioner had for mercy." In any event, there is no suggestion of matters which might have been offered in mitigation and no basis offered for believing that bifurcation in this case would have been beneficial to petitioner or have affected sentencing.

In this case it appears that petitioner has simply "thrown out" numerous possibilities of attorney error without anchoring such "possibilities" to anything concrete in the record. Her burden, however, is to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," id. at 690, and this she has failed to do. It necessarily follows that the finding of the circuit court that counsel "reasonably performed under prevailing professional norms" was not contrary to or an unreasonable application of Supreme Court law.

---

[18] Interestingly, in an "Index" of proceedings in the trial court submitted as an attachment to petitioner's response to the respondent's motion for summary judgment, there is listed a "Motin [sic] for Bifurcated Trial" filed August 20, 1999.

Finally, petitioner asserts "that the cumulative effect of the numerous errors cited ... rises to the level requiring the reversal of Petitioner's conviction." Not having found error, however, the Court need not consider the cumulative effect of non-errors.

### RECOMMENDATION

On the basis of the foregoing findings of fact and conclusions of law, it is **RESPECTFULLY RECOMMENDED** that relief be denied and that the petition for writ of habeas corpus be dismissed.

Petitioner and respondent are hereby notified that a copy of these Findings and Recommendation will be submitted to the Honorable Robert C. Chambers, United States District Judge, and that, in accordance with the provisions of Rule 8(b), Rules Governing §2254 Cases, the parties may, within thirteen days of the date of filing these Findings and Recommendation, serve and file written objections with the Clerk of this Court, identifying the portions of the Findings and Recommendation to which objection is made and the basis for such objection. The judge will make a de novo determination of those portions of the Findings and Recommendation to which objection is made in accordance with the provisions of 28 U.S.C. §636(b) and the parties are advised that failure to file timely objections will result in a waiver of their right to appeal from a judgment of the district court based on such Findings and Recommendation. Copies of objections shall be served on all parties with copies of the same to Judge Chambers and this Magistrate Judge.

The Clerk is directed to file these Findings and Recommendation and to mail a copy of the same to petitioner, respondent, and all counsel of record.

DATED: October 28, 2008

_____
MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE